ACCEPTED
03-15-00341-CV
7955647
THIRD COURT OF APPEALS
AUSTIN, TEXAS
11/23/2015 3:42:52 PM
JEFFREY D. KYLE
CLERK

# 03-15-00341-CV

In the Court of Appeals for the Third District of Texas
Austin, Texas

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
11/23/2015 3:42:52 PM
JEFFREY D. KYLE
Clerk

_____

**ANTIOCH ST. JOHNS CEMETERY COMPANY
D/B/A AMERICAN MEMORIAL PARK, GRAND PRAIRIE, TEXAS;
GERALD WEATHERALL; AND BEVERLY RANDALL-WEATHERALL**

*Appellants*

V.

**TEXAS DEPARTMENT OF BANKING COMMISSIONER,**

*Appellee*

_____

On Appeal from the 261st Judicial District Court of Travis County, Texas,
Cause No. D-1-GN-14-000367

_____

**BRIEF OF APPELLEE
TEXAS DEPARTMENT OF BANKING COMMISSIONER**

_____

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General
for Civil Litigation

LESLI G. GINN
Division Chief, Financial Litigation
and     Charitable Trusts Division

ANN HARTLEY
Attorney in Charge
State Bar No. 09157700

Office of the Attorney General
Financial Litigation and
    Charitable Trusts Division
PO Box 12548
Austin, Texas 78711-2548
Tel:  (512) 936-1313
Fax: (512) 477-2348
ann.hartley@texasattorneygeneral.gov
COUNSEL FOR APPELLEE

**<u>NO</u> ORAL ARGUMENT REQUESTED**

# TABLE OF CONTENTS

Record and Party References.......................................................................v

Statement of the Case ............................................................................ vii

Issues Presented for Review ...................................................................viii

Statement of Facts...................................................................................1

    Weatheralls buy the St. Johns cemetery In 2009........................................1
    Violations, Cease and Desist Order, Administrative Hearing ....................1
    Motion For Rehearing.................................................................................3
    Lawsuit.......................................................................................................4

Summary of the Argument ........................................................................4

Standard of Review ..................................................................................5

        Issue 1    Appellants did not preserve for judicial review any
                    argument not raised in the Motion For Rehearing. ..............6

        Issue 2    The Commissioner's Final Order was supported
                    by substantial evidence....................................................10

        Issue 3    The assessment of an administrative penalty
                    against Gerald Weatherall was authorized by
                    law and supported by substantial evidence. .....................17

                    A.    The Commissioner is authorized to
                            assess penalties against an individual.......................17

                    B.    St. Johns operated without a corporate charter. ..........22

Prayer ....................................................................................................23

Certificate of Compliance........................................................................25

Certificate of Service...............................................................................25

Appendix.................................................................................................26

# TABLE OF AUTHORITIES

**Cases**

*BFI Waste Sys. v. Martinez Envtl. Group*
  93 S.W.3d 570 (Tex.App.-Austin 2002, pet. denied)..............................7

*Castleberry v. Branscum*
  721 S.W.2d 270 (Tex. 1986) .......................................................21

*Entergy Gulf States, Inc. v. Public Util. Comm'n of Tex.*
  173 S.W.3d 199 (Tex.App.–Austin 2005, pet. denied).......................4, 7

*Firemen's & Policemen's Civil Serv. Comm'n v. Brinkmeyer*
  662 S.W.2d 953 (Tex. 1984) ...................................................12

*Granek v. Texas State Bd. of Med. Exam'rs*
  172 S.W.3d 761 (Tex.App.–Austin 2005, no pet.)...................................6

*Hill v. Bd. of Trustees*
  40 S.W.3d 676 (Tex. App.–Austin 2001, no pet.)....................................7

*Imperial American Resources Fund, Inc. v. Railroad Commission*
  557 S.W.2d 280 (Tex. 1977) ...................................................10

*Montgomery Indep. Sch. Dist. v. Davis*
  34 S.W.3d 559 (Tex. 2000) ...................................................6

*Pierce v. Texas Racing Comm'n*
  212 S.W.3d 745 (Tex.App.–Austin 2006, pet. denied)............................6

*Scally v. Texas State Bd. of Med. Examiners*
  351 S.W.3d 434 (Tex. App.–Austin 2011, pet. denied).........................12

*State v. Malone Svc. Co.*
  853 S.W.2d 82 (Tex. App.–Houston [14th Dist.] 1993, writ denied) . 18, 19

*Tex. Alcoholic Beverage Commission v. Quintana*
  225 S.W.3d 200 (Tex.App.–El Paso 2005, pet. denied)....................7, 8, 9

*Tex. Health Facilities Comm'n v. Charter Med. Dallas, Inc.*
    665 S.W.2d 446 (Tex. 1984) ....................................... 4, 10, 14

**Statutes**

TEX. BUS. CORP. ACT art. 2.21 .....................................................10

TEX. BUS. CORP. ACT art. 11.02(B)................................................10

TEX. GOV'T CODE § 311.005........................................................18

TEX. GOV'T CODE § 2001.071........................................................ vii

TEX. GOV'T CODE § 2001.074(2)(A)-(F) .......................................5

TEX. GOV'T CODE § 2001.174........................................................5, 6

TEX. GOV'T CODE § 2001.174(2)(E)............................................12

TEX. HEALTH & SAFETY CODE § 711.021 ....................................20

TEX. HEALTH & SAFETY CODE § 711.0442 ...................... 16, 18, 20

TEX. HEALTH & SAFETY CODE § 711.055 .........................5, 18, 20

TEX. HEALTH & SAFETY CODE § 711.056.................. 16, 17, 18, 20

TEX. HEALTH & SAFETY CODE § 712.003.......................................2

TEX. HEALTH & SAFETY CODE § 712.0441 ................... 5, 17, 18, 20

# RECORD AND PARTY REFERENCES

Gerald Weatherall is an appellant, as is Beverly Randall-Weatherall. The term "**Mr. Weatherall**" refers to Gerald, because Gerald was found to be the person responsible for violations of law (3 RR 441/425, # 21), Beverly was found to have not exercised responsibility for cemetery operations (3 RR 431/415/17, # 16), the administrative penalty at issue was assessed against Gerald but not Beverly (3 RR 446/429), and the judgment now appealed affirmed the administrative order assessing a penalty against Gerald but not Beverly (CR 14).

"**St. Johns**" refers to the cemetery in Grand Prairie, Dallas County, Texas, known as Antioch St. Johns Cemetery Company d/b/a American Memorial Park.

"**DOB**" refers to the Texas Department of Banking.

"**Apt. Br.**" refers to Appellant's Brief.

The Reporter's Record comprises three volumes. References to the first two volumes of the Reporter's Record will show the volume number before "RR" and the page number afterward. "2 RR 4" refers to page 4 of Volume 2 of the Reporter's Record.

The third volume contains the administrative record that was admitted as Joint Exhibit 1 in the trial court (2 RR 4). Because this record was compiled for this Court in Adobe format, there are several page-numbering systems for most documents: the Adobe page, the "Banking Dept"-stamped page, and the internal, document-specific page.

Page numbers will be listed, separated by a slash, in this order:

(1) Adobe page,

(2) Banking Dept-stamped page,

(3) internal, document-specific page where appropriate.

For example, (3 RR 36/23/6) refers to the third volume of the Reporter's Record, Adobe page 36 (easiest to find on a computer) / Banking Dept page 23 stamped on top of the page for filing with the trial court, and / page 6 of the document it is part of (the hearing transcript). Where there are only two page numbers, there is no internal page numbering, or the document has only a few pages.

The Clerk's Record is referred to as "CR." There is only one volume, so "CR 14" refers to page 14 of the Clerk's Record.

## STATEMENT OF THE CASE

The Texas Department of Banking regulates perpetual care cemeteries. Appellants were operating the Antioch St. Johns Cemetery Company d/b/a American Memorial Park, a perpetual care cemetery. Department of Banking staff initiated an enforcement action against Appellants and after a hearing, on November 25, 2013, the Department of Banking Commissioner issued a Final Order against Appellants (3 RR 446/429) adopting the Proposal for Decision Following Exceptions, including specifically the Findings of Fact and Conclusions of Law. The Final Order assesses an administrative penalty of $56,000 against Antioch St. Johns Cemetery Company d/b/a American Memorial Park ("St. Johns") and Gerald Weatherall, Sr. ("Mr. Weatherall"), in his individual capacity and in his capacity as former President of St. Johns.

After Appellants' Motion for Rehearing was denied, Appellants sought judicial review as authorized by Texas Government Code Section 2001.071 (CR 3, 10).

After a hearing, on April 30, 2015, the Travis County District Court affirmed the Final Order (CR 14), and Appellants filed notice of appeal (CR 15).

## ISSUES PRESENTED FOR REVIEW

1.     Appellants did not preserve for judicial review any arguments not raised in the Motion for Rehearing.

2.     The Commissioner's Final Order was supported by substantial evidence.

3.     The assessment of an administrative penalty against Gerald Weatherall was authorized by law and supported by substantial evidence.

## STATEMENT OF FACTS

**Weatheralls Buy the St. Johns Cemetery in 2009**

In 2009, the Weatheralls purchased St. Johns, a cemetery operation and business. (3 RR 418/402/4). Starting in 2009, DOB staff performed three audits or examinations of cemetery operations and prepared a Report of Examination for each audit, setting out the violations observed and assessing the adequacy of Mr. Weatherall's attempts at compliance. (3 RR 420/404/6).

**Violations, Cease and Desist Order, Administrative Hearing**

Due to persistent violations and Mr. Weatherall's failure to correct them, Certificate of Authority No. 74 to operate the cemetery was not renewed when it expired March 1, 2012. (3 RR 424/408/10). Mr. Weatherall continued operating, without a certificate of authority, so an Emergency Order to Cease and Desist was issued May 16, 2012. (3 RR 424/408/10). Mr. Weatherall violated this Order (3 RR 441/425/27, #19) by burying the body of a person on June 14, 2012 and failing to send documentation to DOB as required by the Order.

As a result of Mr. Weatherall's continued poor performance, DOB staff initiated the administrative proceeding (3 RR 420/404/6) that resulted in the Commissioner's Final Order (CR 14) adopting the Proposal for Decision

1

Following Exceptions ("PFD") (3 RR 415/399/1) and assessing administrative penalties.

The Commissioner found, among other things, that the condition of the cemetery deteriorated after Mr. Weatherall took over; parts of the cemetery were not properly marked; graves had collapsed, creating deep sinkholes (3 RR 423-433/416-417/18-19, #21); the internment register reflected two burials in the same space on eight occasions; on four occasions the burial card showed a person was buried in a plot while the internment register showed the burial of another person in that plot (3 RR 433/417/19, #24); on four occasions the burial cards and the internment register showed different burial plots for the same person; and on four occasions, the burial cards and the internment register show different persons were buried in the same plot (3 RR 434/418/20, #24); the cemetery company sold plots on many occasions without having filed with the county clerk an accurate map or plat showing the location of the cemetery plots; and the cemetery company continued operating after March 1, 2012, when Certificate of Authority No. 74 (required for lawful operation of a perpetual care cemetery, TEX. HEALTH & SAFETY CODE §§ 712.003, .0032) expired (3 RR 435/419/21, ##34, 36).

The Commissioner also found that, although Mr. Weatherall attempted to address some violations brought to his attention, the failure to correct them

2

and his continual repetition of some violations established a pattern of willful disregard for the law applicable to perpetual care cemeteries. (3 RR 436/420/22, #38).

After listing the numerous violations of applicable law (3 RR 437-441/421-425/23-27) by Mr. Weatherall, the administrative law judge ("ALJ") found that the evidence supported an administrative penalty in an amount up to $70,000.00 (3 RR 441/425/27, #23). However, because DOB had not renewed the Certificate of Authority for the cemetery, Mr. Weatherall's cemetery company was no longer in business, and Mr. Weatherall neither owned the cemetery property nor conducted cemetery operations any longer, the ALJ recommended an administrative penalty up to only $56,000.00 (3 RR 442/426/28).

**Motion for Rehearing**

Appellants timely filed a Motion for Rehearing (3 RR 449/431), a two-page document that does not cite or refer to any finding of fact or conclusion of law. DOB replied (3 RR 452/433), noting that, "The substance of the Motion is contained in one sentence and wholly fails to apprise the Texas Banking Commissioner (Commissioner) of the legal basis upon which Respondents request a rehearing." The Motion for Rehearing was denied (3 RR 457/437).

3

**Lawsuit**

Appellants timely filed suit in Travis County seeking judicial review of DOB's decision (CR 3), hearing was had on April 30, 2015, and judgment was rendered April 30, 2015 affirming the Commissioner's Order. (CR 14).

## SUMMARY OF THE ARGUMENT

Appellants preserved *no* argument for judicial review because the Motion for Rehearing, while timely, contains no argument and mentions not a single finding of fact or conclusion of law in the PFD. An appellant must raise his issues in his motion for rehearing to preserve them for review. *See Entergy Gulf States, Inc. v. Public Util. Comm'n of Tex.*, 173 S.W.3d 199, 210 (Tex.App.–Austin 2005, pet. denied).

Since Appellants preserved no argument to challenge the Commissioner's Final Order, the trial court was entitled to presume that the order was supported by substantial evidence, while the burden was on Appellants to prove otherwise. *See Tex. Health Facilities Comm'n v. Charter Med. Dallas, Inc.*, 665 S.W.2d 446, 453 (Tex. 1984).

Even without this presumption, Appellants have not pointed to a speck of evidence to support any challenge to the Commissioner's Final Order — in the trial court or in Appellants' Brief.

4

The Commissioner was authorized by Health and Safety Code Sections 712.0441 and 711.055, and by the evidence, to assess an administrative penalty of $56,000.00 against Mr. Weatherall in his individual capacity.

## STANDARD OF REVIEW

This Court's review of the Commissioner's Final Order is governed by the "substantial evidence" standard in the Texas Administrative Procedure Act ("APA"). TEX. GOV'T CODE § 2001.074.

This standard requires that the Court reverse or remand a case for further proceedings "if substantial rights of the appellant have been prejudiced because the administrative findings, conclusions, or decisions" are:

(A)    in violation of a constitutional or statutory provision,

(B)    in excess of the agency's statutory authority,

(C)    made through unlawful procedure,

(D)    affected by other error of law,

(E)    not reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole, or

(F)    arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

TEX. GOV'T CODE § 2001.074(2)(A)-(F).

5

With respect to subparagraph (E), the test is not whether the Court believes the Commissioner reached the correct conclusion, but whether his factual findings are reasonable "in light of the evidence from which they were purportedly inferred." *Granek v. Texas State Bd. of Med. Exam'rs*, 172 S.W.3d 761, 778 (Tex.App.–Austin 2005, no pet.). The Court may not substitute its judgment for that of the Commissioner on the weight of the evidence on matters committed to agency discretion. *See* TEX. GOV'T CODE § 2001.174; *Pierce v. Texas Racing Comm'n*, 212 S.W.3d 745, 751 (Tex.App.–Austin 2006, pet. denied).

On appeal from the district court's judgment, the focus is on the Commissioner's decision. *See Montgomery Indep. Sch. Dist. v. Davis*, 34 S.W.3d 559, 562 (Tex. 2000).

## ISSUE 1

**Appellants did not preserve for judicial review any arguments not raised in the Motion for Rehearing.**

Appellants preserved *no* argument for judicial review because the Motion for Rehearing, while timely, contained no argument and mentioned not a single finding of fact or conclusion of law in the PFD. The PFD contains 39 Findings of Fact and 23 Conclusions of Law (3 RR 429-441/413-425). The Motion for Rehearing did not mention a single one. The single substantive sentence-paragraph states in its entirety:

6

> To the extent that the Movants disagree with the penalties assessed against the individual movants in their individual capacities, and that such penalties do no[t] comport with the finding of facts by the Administrative Law Judge and the rules regarding governance of cemeteries for the state of Texas, Movants request a rehearing in this cause.

(3 RR 449/431).

An appellant must raise his issues in his motion for rehearing to preserve them for review. *See Entergy Gulf States, Inc. v. Public Util. Comm'n of Tex.*, 173 S.W.3d 199, 210 (Tex.App.–Austin 2005, pet. denied) ("The motion for rehearing must be sufficiently definite to allow the agency to cure the error or defend the order. . . . To preserve the issue for review, the party must state in the motion for rehearing the particular issue the party asserts was error and the legal basis upon which the claim rests.")[1]

The motion for rehearing must specify: (1) the particular finding of fact, conclusion of law, ruling or other action by the agency that was purportedly in error, and (2) the legal basis for claiming the error. *Tex. Alcoholic Beverage Commission v. Quintana*, 225 S.W.3d 200, 203 (Tex.App.–El Paso 2005, pet. denied). Both elements must be present, and neither element may

---

[1] This is a different question from whether a motion for rehearing confers jurisdiction on the district court. *See BFI Waste Sys. v. Martinez Envtl. Group*, 93 S.W.3d 570, 578 (Tex.App.–Austin 2002, pet. denied) ("The timely filing of a motion for rehearing is jurisdictional, but the sufficiency of the motion's content goes solely to the issue of preservation of error.") (citing *Hill v. Bd. of Trustees*, 40 S.W.3d 676, 679 (Tex. App.–Austin 2001, no pet.)

be stated solely in generalities. *Id.* ("It is insufficient to state that the order is not supported by substantial evidence.")

Appellants' Motion for Rehearing does not preserve the errors about which Appellants now complain. At best, the particular agency action complained of in this sentence is the administrative penalty assessed against Mr. Weatherall in his individual capacity. Therefore, the Motion for Rehearing fails to preserve error as to any finding of fact, conclusion of law, or agency action other than the administrative penalty against Mr. Weatherall individually. Moreover, the Motion for Rehearing specifies no legal basis for complaining about the penalty against Mr. Weatherall. To say merely that "such penalties do no[t] comport with the findings of facts," is no different from saying that the penalties are not supported by substantial evidence, which is insufficient to preserve error. *See Quintana*, 225 S.W.3d at 203.

In *Quintana*, the plaintiff in her motion for rehearing "respectfully request[ed] that the cancellation be reconsidered because the evidence presented at trial does not support the cancellation and constitutes a harsh penalty." *Id.* at 204. The court found this statement to be insufficient to preserve error, noting that while Quintana "specified the ruling she asserted was error, namely, the cancellation of her license and permit, she did not challenge any of the specific factual findings forming the basis of the

8

Commission's decision to cancel her permit and license." *Id.* Here, the PFD contains 39 findings of fact, 24 of which, taken together, find that violations occurred and that Mr. Weatherall is responsible for them in his individual capacity. (3 RR 430-436/414-420/16-20; 441/425 #21.) As in *Quintana*, the Appellants' single sentence fails to challenge any factual findings forming the basis of the administrative penalty assessed against Mr. Weatherall.

The *Quintana* court also explained that to the extent Quintana "intended to appeal the Commission's legal conclusion that Section 11.61(b)(13) does not require proof that the employee was on duty or acting within the course and scope of employment, she was required to state this legal basis for the appeal in her motion for rehearing." *Id.* Here, Appellants state in their brief (Apt. Br. 7) that "Mr. and Mrs. Weatherall are shielded by the existence of St. Johns as a corporate entity unless it is found that the corporation has been used to perpetuate [sic] a fraud." But, under the court's analysis in *Quintana*, Appellants were required to state this legal ground for appeal in their Motion for Rehearing. They failed to do so. Because

9

Appellants have preserved no issue for judicial review, the Court should uphold the trial court's affirmance of the Commissioner's Final Order.[2]

## ISSUE 2

### The Commissioner's Final Order was supported by substantial evidence.

Since Appellants preserved no argument to challenge the Commissioner's Final Order, the trial court was entitled to presume that the order was supported by substantial evidence. *See Tex. Health Facilities Comm'n v. Charter Medical Dallas, Inc.*, 665 S.W.2d 446, 453 (Tex. 1984) ("*Charter Medical*"):

> The findings, inferences, conclusions, and decisions of an administrative agency are presumed to be supported by substantial evidence, and the burden is on the contestant to prove otherwise. *Imperial American Resources Fund, Inc. v. Railroad Commission*, 557 S.W.2d 280, 286 (Tex. 1977).

Even without this presumption, Appellants have not pointed to *any* evidence to support *any* challenge to the Commissioner's Final Order. The entire Appellant's Brief contains a total of <u>two</u> record cites (to 3 RR 436/420/22, Findings of Fact ##38 and 39). Appellants assert that the co-

---

[2] Appellants cite Article 2.21 of the Texas Business Corporation Act ("BCA") (Apt. Br. 6). On January 1, 2010, the BCA expired and was replaced by the Texas Business Organizations Code. *See* TEX. BUS. CORP. ACT art. 11.02(B) ("This Act expires January 1, 2010."). The Business Organizations Code limits an individual's liability for a corporation's obligations, but the administrative penalty in this case was assessed not only against the corporation but against Mr. Weatherall in his individual capacity.

10

existence of these two findings of fact "within the same opinion" shows that "the ALJ opinion is arbitrary and capricious." (Apt. Br. 5). To the contrary, these findings simply show that the ALJ recognized Mr. Weatherall's efforts to address some of the continual violations and still concluded that the frequent repetition of the some of the violations showed a willful disregard for the requirements of the law applicable to perpetual care cemeteries.

The presumption that the order was supported by substantial evidence is intact in light of the absence of *any* record cite to *any* evidence to the contrary.

The Findings of Fact and Conclusions of Law in the PFD are well summarized by the ALJ:

> The evidence presented at the hearing proved a pattern of wilful disregard concerning the violations. It appears that the main reason[] for the continuing violations [was] ignorance of the law at first, but later was incompetence and an indifference concerning management of the cemetery and the cemetery company. Nevertheless, the evidence proves the factors that support making a finding of wilful disregard. A determination of the issue of wilful disregard would not have a practical impact in this case, however, because the staff has recommended a less monetary penalty than what would be the maximum.

(3 RR 428/412/14).

Even if the Court concludes that Appellants have preserved any error to challenge the Final Order, the Commissioner's conclusions of law and

11

administrative penalties are supported by substantial evidence. The APA authorizes a reviewing court to test an agency's findings, inferences, conclusions, and decisions to determine whether they are reasonably supported by substantial evidence considering the reliable and probative evidence in the record as a whole. *See* TEX. GOV'T CODE § 2001.174(2)(E). Whether the agency's order satisfies the substantial-evidence standard is a question of law. *Scally v. Texas State Bd. of Med. Examiners*, 351 S.W.3d 434, 441 (Tex. App.–Austin 2011, pet. denied), citing *Firemen's & Policemen's Civil Serv. Comm'n v. Brinkmeyer*, 662 S.W.2d 953, 956 (Tex. 1984). A court is to presume that the order is supported by substantial evidence and a plaintiff or appellant bears the burden of proving otherwise. *See Scally, id.* at 441. "The burden is a heavy one – even a showing that the evidence preponderates against the agency will not be enough to overcome it, if there is some reasonable basis in the record for the action taken by the agency." *Id.* Appellants do not meet this high burden.

Appellants essentially asked the trial court, and now this Court, to re-weigh the evidence submitted to the ALJ and to substitute its judgment for that of the ALJ. Appellants assert that the ALJ's findings of fact are "completely contradictory" (Apt. Br. 4) because although the ALJ found that Mr. Weatherall corrected some of the noted violations – including repaying

the perpetual care cemetery trust fund – the ALJ also concluded that the violations were so numerous that Mr. Weatherall showed a "willful disregard for the law that applies to perpetual care cemeteries." (Apt. Br. 5; 3 RR 436/420/22, #38.) There is no inherent contradiction in the conclusion that although Appellants corrected some violations, there were so many violations overall, and so many persistent failures to address fundamental problems, that the Appellants' actions amount to willful disregard. As explained by the ALJ:

> The violations concerning failure to disclose on the sale/purchase agreements the accurate amount to be deposited in the Perpetual Care Trust Fund appear to be low on the seriousness scale. Failure to make timely deposits in the Perpetual Care Trust Fund involve a higher seriousness, but the shortages ultimately were made up. The violations of failure to accurately plat and file for record an accurate plat and of failures to keep accurate burial records are particularly serious, because they are necessary for anyone to locate the graves of those who were buried. It appears that these violations were a factor in some of the complaints. The violation of the Commissioner's Order is a very serious violation. The history of so [many] violations during a short period of time and of a violation of the Cease and Desist order weighs heavily in favor of a higher penalty. Mr. Weatherall's actions to correct many of the violations and that resulted in the continuing occurrence of violations demonstrates both good faith and a lack of good faith.

(3 RR 427-428/412-13/14-15.)

After weighing the evidence, the ALJ found that Mr. Weatherall's actions establish a pattern of willful disregard for the requirements of the law

13

and recommended "that the Commissioner impose an administrative penalty that is no higher than the low end of the range advocated by the staff." (3 RR 428/413/15; 436/420/2).

The reviewing standard is whether "there is some reasonable basis in the record" for the ALJ's conclusion. *Charter Medical*, 665 S.W.2d at 453. Here, the PFD specifically cites (3 RR 404-409) the administrative record (3 RR 47/34/16; 173-178/160-165/1-6; 179-192/166-179/7-20; 194-213/181-200/22-14; 241-244/228-231/69-72; 245/230/73; 56/43/25; 254/241/82; 193-213/180-200/21-41; 85/72/54) that includes evidence of numerous violations, including consumer complaints (3 RR 244/231; 269-70/256-57; 277-78/264-65; 291-94/278-81; 311/298).

One woman whose grandfather is buried at St. Johns wrote: "Disgraceful, disrespectful and disgusting don't come close to describing the appearance of this final resting place for many people. . . ." The same woman noted that she took her 87 year old grandmother out to visit the grave of her husband, and "she was in tears at what she saw and the thought that one day she will have to be laid to rest there." (3 RR 244/231).

Another woman could not find her son's grave two and half months after his funeral despite repeated visits to the cemetery and requests to Mr. Weatherall for information. (3 RR 277-278/264-265; 291-295/278-281).

14

Another woman went to put flowers on her mother's grave and discovered someone else's headstone on the spot she had purchased. After searching the entire cemetery she could not find her mother's grave, though she did meet other people looking for graves. When she called the St. Johns phone number for help, it was disconnected. (3 RR 269-270/256-257).

The record also includes evidence of failures to correct violations identified in the various Reports of Examination. For example, the June 30, 2011, Report of Examination (3 RR 193/180) notes that Mr. Weatherall was given 30 days from the date of the June 30, 2010, Report of Examination to implement corrective actions for the cited violations and provide a written response to the DOB by September 6, 2010. (3 RR 203/190/7). He failed to respond by September 6, provided limited responses only after further inquiries from the DOB, and still failed to correct the platting violation as of the June 30, 2011, Report of Examination. (3 RR 203/190/7). Similarly, the February 7, 2012, Limited Report of Examination notes that the "overall condition of the certificate holder has not improved since the last full-scope examination and remains critically poor," and "the pattern of refusing to comply with Departmental requests demonstrates management's unwillingness to achieve compliance." (3 RR 219/206/1.)   It further notes that Mr. Weatherall "failed to demonstrate corrective action on eleven of the

15

nineteen violations cited" in the June 30, 2011 Report of Examination. (3 RR 219/206/1).

These violations and the failure to correct them establish a reasonable basis in the record for the ALJ's conclusion that Mr. Weatherall's conduct was willful. Moreover, Appellants do not actually contest these violations in their brief — they merely suggest that Mr. Weatherall's attempts to address certain violations should have been given greater weight by the ALJ, and that because the PFD contains conclusions Appellants deem "contradictory," it is "arbitrary and capricious." (Apt. Br. 5). Accordingly, even if Appellants had preserved error, the conclusions about which they complain are supported by substantial evidence.

Furthermore, as noted by the ALJ, the determination of willful disregard has no practical impact on the amount of the administrative penalty assessed. (*See* PFD, 3 RR 428/412/14.) A finding of willful disregard for the requirements of the law allows the fact finder to recommend that the Commissioner impose the maximum administrative penalty permitted, or to cancel or not renew the corporation's certificate of authority. TEX. HEALTH & SAFETY CODE §§ 711.056(a) and 712.0442. Here, the DOB staff recommended an administrative penalty in the range of $56,000 to $70,000 for fourteen violations. (3 RR 123/110/92; 427-428/411-412/13-14.) This

16

range is below the maximum penalty authorized by Chapters 711 and 712. Under sections 711.056 and 712.0441, the Commissioner may assess an administrative penalty of up to $1,000 per day of violation if the responsible person (1) does not correct the violation within 30 days of notification or (2) engages in a pattern of violation. TEX. HEALTH & SAFETY CODE §§ 711.056 and 712.0442. Here, the ALJ concluded (3 RR 427/411/13) that

> Mr. Weatherall is responsible for multiple violations that are set forth in the Conclusions of Law, which count in the hundreds and which involve multiple days for most violations. The violations include both those that were not corrected within 30 days of notice and those that establish a pattern of violation.

Even if preserved, Appellants' challenge to the Commissioner's Final Order would fail in the face of overwhelming substantial evidence.

## ISSUE 3

**The assessment of an administrative penalty against Gerald Weatherall was authorized by law and supported by substantial evidence.**

### A. The Commissioner is authorized to assess penalties against an individual.

Even if they had been preserved, Appellants' arguments regarding the "corporate shield" (Apt. Br. 7) are misplaced.

Here, the ALJ concluded that an "administrative penalty in the amount of up to $70,000 is supported by the evidence under the provisions of Health

17

and Safety Code Sections 711.055, 711.056, 712.0441, and 712.0442." (3 RR 441/425/27, #23). The ALJ recommended a lower amount, an administrative penalty of up to $56,000. (3 RR 442/426/28).

The Final Order (3 RR 446-447/429-430) assesses an administrative penalty in the amount of $56,000 against the corporation and Mr. Weatherall individually, but not against Beverly Randall-Weatherall: The penalty is assessed "against respondents Antioch St. Johns Cemetery Company d/b/a American Memorial Park, and Gerald Weatherall, Sr. in his individual capacity and in his capacity of former President of Antioch St. Johns Cemetery Company d/b/a Memorial Park."

Texas Health and Safety Code Sections 711.055 and 712.0441 each allow the Commissioner to impose an administrative penalty on a "person." TEX. HEALTH & SAFETY CODE §§ 711.055(b), 712.0441(a). Texas Government Code Section 311.005 (Code Construction Act) defines "person" to include a "corporation … and any other legal entity," which includes natural persons. *See State v. Malone Svc. Co.*, 853 S.W.2d 82, 84 (Tex. App.–Houston [14th Dist.] 1993, writ denied). In *Malone Service*, the defendants argued that there could be no individual liability for the company's president and plant manager for violations of the Texas Water Code because those individuals are not permit holders, but merely act as agents for the permit holders.

18

*Id.* at 84-85. The court rejected this argument, noting that "liability is based on the agent's own actions, not his status as agent" in part because "an environmental tort is more analogous to a situation in which a corporate officer who participates in or directs the commission of a tort may be held personally liable." *Id.* at 85. Here, Mr. Weatherall's liability is based on his own actions, not his status as an agent of St. Johns.

The Commissioner was justified by the record, as well as authorized by law, to assess an administrative penalty against Gerald Weatherall in his individual capacity. Conclusion of Law #21 (3 RR 441/425/27) says that:

> Gerald Weatherall, Sr., is the person who is responsible, individually and in his capacity as former president of Antioch St. James Cemetery d/b/a American Memorial Park, for the violations of law that are set forth in these Findings of Fact and Conclusions of Law.

Conclusion of Law #22 (3 RR 441/42527) says that:

> The Commissioner of Banking in his discretion has the authority under Health and Safety Code Sections 712.0441 and 711.055 to assess an administrative penalty against Antioch St James Cemetery d/b/a American Memorial Park and Gerald Weatherall, Sr., in his individual capacity and in his capacity as former president of the cemetery company, in the amount of $1,000 for each day of violation.

Sections 712.0441(a) and 711.055(b) are identical with respect to the parts in each that authorize the Commissioner to impose an administrative penalty on:

19

a *person* who:

>   (1)   violates this chapter or a final order of the commissioner . . . ; or

>   (2)   engages in a pattern of violations, as determined by the commissioner.

TEX. HEALTH & SAFETY CODE §§ 711.055(b) and 712.0441(a) [Emphasis added].

While Texas Health and Safety Code Section 711.021 provides that a cemetery may be operated by a person that is a corporation organized for cemetery purposes, this does not limit the definition of "person" in other parts of Chapter 711. Within subchapter D, which includes the enforcement provisions of Chapter 711, the term "corporation" is not used interchangeably with the term "person." For example, Section 711.051 states that "[a] cemetery corporation that violates this chapter or Chapter 712 forfeits the corporation's charter . . . ." In contrast, Section 711.0521 provides that "[a] person who is an individual, firm, association, corporation, or municipality . . . commits an offense if the person interferes with a person's reasonable right to ingress and egress under Section 711.041."

Chapter 712 also does not define "person," but its context makes clear that "person" is not limited to a corporation. Section 712.0443 allows the commissioner to "issue an order to cease and desist to a person . . . ." If the

20

legislature had intended to limit the Commissioner's enforcement authority to extend only to corporations—and not individuals—it would have said so.

The case[3] and statutory provisions[4] cited by Appellants regarding shareholder liability for corporate obligations (Apt. Br. 7) have no bearing on the Commissioner's authority to enforce the provisions of Chapters 711 and 712. Whether a shareholder is personally liable for the contractual obligations of a corporation is a different question from whether the Commissioner can assess an administrative penalty against an individual operating a cemetery who, after notice and opportunity for a hearing, is found to have violated the provisions of Chapters 711 and 712. The Commissioner found that Mr. Weatherall was president of the cemetery company and exercised an active role as the person and officer who was responsible for the operations of the cemetery and the cemetery company. (3 RR 431/415/17, #15). Even if Appellants had preserved the "corporate shield" argument by mentioning it in their Motion for Rehearing—which they did not—the Commissioner had statutory authority, as well as ample evidence regarding the poor operation of the St. Johns cemetery by Mr.

---

[3] *Castleberry v. Branscum*, 721 S.W.2d 270 (Tex. 1986).

[4] Sections 21.223, 21.2224, and 21.225 of the Texas Business Organizations Code.

Weatherall, to assess the administrative penalty against Mr. Weatherall in his individual capacity.

## B. St. Johns operated without a corporate charter.

Under Appellants' theory, an individual operating a perpetual care cemetery could evade the Commissioner's enforcement powers simply by failing to operate as a corporation. St. Johns temporarily forfeited its corporate charter in 2011 and later terminated its corporate charter with the Secretary of State in May 2012. Even so, the cemetery continued to operate under Mr. Weatherall's personal direction until at least June 14, 2012.[5] (3 RR 141/128/110; 311-313/298-300.) Actions taken after St. Johns terminated its corporate charter would not be protected by any "corporate shield" because no corporation existed.

The record shows that St. Johns operated without a corporate charter between January 28, 2011 and November 7, 2011. (*See* 3 RR 197/184/1; 205/192/9; 219/206/1). During this period, the DOB issued its Report of Examination as of June 30, 2011, which detailed nineteen violations. (3 RR 197-207/184-94/1-11). Also during this period, the DOB received complaints

---

[5] St. Johns, the corporation, went into Chapter 7 bankruptcy. During the bankruptcy proceedings, it became clear that the corporation itself had no assets – did not own the cemetery – because the cemetery land was jointly owned by Weatherall LLC and Ms. Randall-Weatherall. (3 RR 145-146/132-133).

about the cemetery, including the following plea from the granddaughter of a man buried at St. Johns, dated June 15, 2011:

> Our plea is that someone will take action and make "the owners" of this cemetery take some sort of responsibility for their actions in the appearance/condition of this area. You can't just smooth out the dirt piles and freshen things up. This is way bigger than that. What about the grave marker that is thrown up against the tree, hidden in all the tall grass, or randomly sitting in the middle of the cemetery? Where do those go? Who do they belong to? You can't just stick it back and say, "Oh I think that one goes here?" The proper action MUST be taken!

(3 RR 244/231). Appellants' theory that Mr. Weatherall may not be held individually liable for these violations is contrary to Chapters 711 and 712 of the Health and Safety Code. Furthermore, they have waived the right to assert the argument.

## PRAYER

Appellee the Texas Department of Banking Commissioner asks this Court to affirm the judgment of the trial court.

23

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

CHARLES E. ROY
First Assistant Attorney General

JAMES E. DAVIS
Deputy Attorney General for Civil Litigation

LESLI G. GINN
Division Chief
Financial Litigation and Charitable Trusts Division

*/s/ Ann Hartley*
ANN HARTLEY
Assistant Attorney General
State Bar No. 09157700
Financial Litigation and Charitable Trusts Division
P.O. Box 12548
Austin, Texas 78711-2548
Telephone:  (512) 936-1313
Telecopier:  (512) 477-2348
ann.hartley@texasattorneygeneral.gov

## CERTIFICATE OF COMPLIANCE

In compliance with Texas Rule of Appellate Procedure 9.4(i)(2), this brief contains 4,972 words, excluding the portions of the brief exempted by Rule 9.4(i)(1).

/s/ Ann Hartley
ANN HARTLEY
Assistant Attorney General

## CERTIFICATE OF SERVICE

I certify that on the 23rd day of November, 2015 a true copy of this Appellee's Brief was sent by email to Appellants' counsel, Mr. Kevin S. Wiley, Jr., at kevinwiley@lkswjr.com.

/s/ Ann Hartley
ANN HARTLEY
Assistant Attorney General

# **APPENDIX**

Texas Department of Banking (DOB) Commissioner's
PROPOSAL FOR DECISION FOLLOWING EXCEPTIONS ..........................................1

DOB Commissioner's FINAL ORDER No. 2013-028 .......................................2

Motion for Re-Hearing ..............................................................3

Final Order – Travis County District Court ...................................4

# Appendix 1

## Proposal for Decision Following Exceptions

Docket No. BE-13-11-326

| | | |
|---|---|---|
| IN THE MATTER OF ANTIOCH | § | BEFORE THE BANKING |
| ST. JAMES CEMETERY COMPANY | § | |
| d/b/a AMERICAN MEMORIAL PARK, | § | |
| GRAND PRAIRIE, TEXAS, (Certificate | § | |
| of Authority No. 74, expired); | § | |
| | § | |
| GERALD WEATHERALL, ST. AS ITS | § | COMMISSIONER OF TEXAS |
| PRESIDENT AND IN HIS INDIVIDUAL | § | |
| CAPACITY; AND, | § | |
| | § | |
| BEVERLY RANDALL-WEATHERALL | § | |
| AS ITS VICE-PRESIDENT | § | AUSTIN, TRAVIS COUNTY, TEXAS |

## PROPOSAL FOR DECISION
## FOLLOWING EXCEPTIONS

This Proposal for Decision Following Exceptions is issued following consideration of

the record consisting of testimony, documentary evidence, and argument of the parties, which

were received at a contested case hearing on June 10, 2013, and Exceptions to the Proposal

for Decision that were filed on October 7, 2013.

## STATEMENT OF THE CASE

This is an enforcement action involving a perpetual care cemetery, which staff of the

Department of Banking initiated against the respondents: Antioch St. James Cemetery

Company d/b/a American Memorial Park, Grand Prairie, Texas; Gerald Weatherall, Sr., as its

President and individually; and, Beverly Randall-Weatherall as its Vice-President. Staff

alleges that the respondents violated provisions of the Texas Health and Safety Code,

Chapters 711 and 712, and Texas Finance Commission Rules, 7 Tex. Admin. Code Chapter

26; and, of Commissioner Order 2012-011, signed on May 16, 2012. Staff seeks

administrative penalties against the company, Mr. Weatherall in his capacity as president and

his individual capacity, and against Ms. Randall-Weatherall in her capacity as vice-president of the company. Antioch St. James Cemetery Company d/b/a American Memorial Park will be referred to as the "Cemetery Company." References to the transcript of the contested case hearing will be "[TR (page number)]."

CHARGES OF VIOLATIONS

The department staff charged the respondents with up to fifteen types of violations involving ten separate Health and Safety Code provisions and five Finance Commission Rules, with failure to comply with and violations of an Emergency Order To Cease and Desist that is dated May 16, 2012, and with operating a perpetual care cemetery without a certificate of authority. Department staff argued that the respondents' actions established a pattern of wilful disregard for the requirements of law concerning operation of the Cemetery Company, within the meaning of Health Code §§711.056 and 712.0442, and that the Commissioner should impose administrative penalties and costs of this proceeding against all the respondents, jointly and severally. The specific violations with corresponding provisions of the Health and Safety Code, the Finance Commission Rules, and the Cease and Desist Order, are set forth in the Notice of Hearing that was signed on May 2, 2013.

## DISCUSSION

APPEARANCES

Department staff, represented by Deborah H. Loomis, Assistant General Counsel, presented evidence of violations with testimony from Mark E. LaPlante and Russell Reese and with documents, including Reports of Examination from 2010, 2011, and 1012; spreadsheets showing information from operations of the cemetery; records concerning four complaints

from 2011 and 2012; and, other correspondence. Ultimately, the staff recommended the imposition of administrative penalties within a range between $56,000 and $70,000 for fourteen violations. [TR 91-92].

Mr. Gerald D. Weatherall, Sr., appeared for the Cemetery Company, as former president of the company, and for himself individually. Mr. Weatherall also owns and operates the Eternal Rest Funeral Home that is located in Plano, Texas. [TR 108; DOB Exhibit 1, p. 47]. Ms. Weatherall appeared as former vice-president of the Cemetery Company. Mr. Weatherall presented evidence in the form of testimony and documents. He declined to offer an original plat of the cemetery, which included what appeared to be a newer depiction of Section J that was taped over the original version on that plat. In general, Mr. Weatherall testified about his efforts to address the violations after receiving notifications from the Department. He testified that they hired a man to run the cemetery and contract workers and that the only time he got involved was at the inspections. [TR 100, 101]. Mr. Weatherall testified that Ms. Randall-Weatherall did not participate in any of the operations of the Cemetery Company and should not be held responsible for any of the violations. Mr. Weatherall felt that he tried to do everything that the Department asked them to do. He testified that once he found out they were not equipped to handle a cemetery, they put it into Chapter 7 bankruptcy, terminated the company's corporate charter, and lost title to the cemetery property through foreclosure.

The Administrative Law Judge concludes that Mr. Weatherall is responsible for violations of the law and recommends assessment of an administrative penalty against him, as president of the cemetery company and individually, and against the cemetery company, as set forth in the recommendation that follows.

402

## APPLICABLE LAW

Pertinent law for the regulation of perpetual care cemeteries is found in the Health and

Safety Code, Chapters 711 and 712, and Finance Commission Rules: Title 7, Part 2, Chapter

26 of the Texas Administrative Code. The applicable provisions are set out in detail in the

Notice of Hearing, appear in the Emergency Cease and Desist Order, and will be set forth in

the Conclusions of Law concerning each asserted violation.

## DISCUSSION OF THE EVIDENCE

### The Cemetery, the Cemetery Company and the Weatheralls' Ownership

This matter involves a cemetery that at least a part of which, named Antioch Cemetery,

was dedicated in 1896. [Weatherall Exhibit 3]. The property is located between Avenue D

and Hardy Road in Grand Prairie, Dallas County, Texas. The record shows that the cemetery

property was not owned by the Cemetery Company.

The Cemetery Company was organized as a corporation beginning in 1952. [TR 111].

Mr. Weatherall was president and a director of the corporation and Ms. Randall-Weatherall

was vice-president and a director of the corporation. The Secretary of State forfeited the

corporate charter in early 2011 for failure to pay franchise taxes and reinstated the charter by

November, 2011, after payment was made. At some time in 2012, the respondents terminated

or dissolved the corporation through the Secretary of State, after the bankruptcy filing and

forfeiture of the cemetery property. [TR 110].

On June 3, 2009, Mr. Gerald Weatherall, Sr., and Ms. Beverly Ann Randall-

Weatherall purchased the cemetery property and the cemetery company from Mr. Robert

Wright and Mr. Ray Windham. [TR 11]. The records for the purchase and change of

ownership of the cemetery company and Certificate of Authority No. 74, including the

documentation that the respondents filed with the Department, showed 50% ownership by

Weatherall Family Funeral Service, LLC, and 50% ownership by Beverly-Randall Weatherall.

At the time of the 2011 examination, Mr. Weatherall reported that he owned 50% of the

cemetery property and company, but documentation of that was not provided. [TR 32]. The

information required to complete a change of ownership was submitted to the Department,

which recorded the change of ownership and of Certificate of Authority No. 74 on or about

December 21, 2009. [Id.]. At some time after the February 7, 2012, Report of Examination,

the Cemetery Company filed for bankruptcy under Chapter 7 and the bankruptcy proceedings

ended with the Cemetery Company being converted b ack to the respondents, because there

were no assets to sell. Also after February 7, 2012, the respondents transferred title to the

property on which the cemetery is located by deed in lieu of foreclosure to Avery Weatherall,

Gerald Weatherall, Sr.'s son. Avery Weatherall lent the money for the Weatheralls' purchase

of the property in 2009.

### Overview of the Asserted Violations

The focus of this proceeding was directed to the general condition of the cemetery

grounds, the record-keeping, and the maintenance of the Perpetual Care Trust Fund ("PCTF")

by the cemetery company, and the operations within two areas of the northeast portion of the

cemetery. [*See generally*, DOB Exhibits 2 and 3]. The two areas were identified as "Section

J" and "New Section J" and in this proposal for decision will be referred to in combination as

"Section J." [Weatherall Exhibit 3 and DOB Exhibit 4]. The records, although too poorly

kept to enable an exact count, show that few burials took place in Section J before 2009, when

404

the respondents took over operation. The records show a total of approximately 24 burials in that section between 1984 and 2008, with no burials recorded during 10 of those 25 years. [DOB Exhibit 3]. Approximately 132 burials were done from 2009 through 2012, with 106 of those done in 2010 and 2011. [Id.]. Mr Weatherall testified that 80-83% of the graves were sold directly to his funeral home [TR 129] and that many of the graves were donated for hardship cases.

### Reports of Examination from the Staff and Responses from the Cemetery Company

From the outset of the respondents' ownership, Department staff reviewed the respondents' operations of the cemetery. Staff performed three audits or examinations of the operations of the Cemetery Company and prepared a Report of Examination ("ROE") for each of the audits/examinations. As a result of the examinations and the inadequacy of the respondents' attempts of compliance, the Commissioner of Banking issued a Cease and Desist Order in 2012, and the staff initiated this enforcement proceeding.

### First Audit: Period Ended June 30, 2010

The first audit of the Cemetery Company's operations covered the period to June 30, 2010. [DOB Exhibit 1, pp. 7-20]. In general, the ROE noted that cemetery operations were adequate, the property and grounds were adequately maintained, and no complaints were on file. The ROE documented what was stated to have been 11 violations of law [TR 16], involving at least 67 instances of violation. [DOB Exhibit 1, pp. 7-20]. The ROE from this audit was sent to the respondents by letter dated August 2, 2010, and directed correction by no later than September 6, 2010. [DOB Exhibit 1, pp. 8-9]. The evidence does not present an accurate picture of the respondent's response to this ROE. [TR 21].

DOB Docket 13-11-326
Antioch St. James Cemetery Company, et al.
Proposal for Decision Following Exceptions

Page 6

Second Audit: June 20, 2010 to June 30, 2011

The results of the second audit, which covered the period of June 20, 2010 to June 30,

2011, are contained in the ROE that was sent to the respondents by letter dated October 19,

2011. [DOB Exhibit 1, pp. 22-41]. This ROE noted that the overall condition of the operation

of the Cemetery Company had deteriorated. The corporate charter had been forfeited as of

January 28, 2011, for failure to pay franchise taxes. The grounds were in poor condition and

a complaint was on file. In the complaint, a family was concerned about the condition of the

grandfather's grave. [TR 22; DOB Exhibit 1, pp. 69-72]. Mr. LePlante inspected the cemetery

on August 11, 2011, in response to the complaint and concluded, in general, that the

complaint was well founded. [DOB Exhibit 1, p. 73]. Mr. LePlante noted that poor condition

of the grounds, mostly in Section J, which included sunken-in graves, what appeared to have

been part of a casket protruding from the ground, graves laid out in different directions, poor

marking of graves without headstones, very old headstones having been broken, with some

appearing to have been pushed off of graves and partially covered by dirt in the excess dirt

pile in the far northeast corner of the cemetery. [TR 25]. Lot pins that locate sections of the

cemetery were lying on the ground in various places. Mr. Weatherall responded to the

complaint and parts of Mr. LePlante's report of his August 11 site visit by letter dated

September 6, 2011. Mr. Weatherall's response included his understanding that the headstones

found in the dirt pile were in a shed that was there when they purchased the property, which

was torn down to make room for more burial plots. [DOB Exhibit 1, p. 82].

The 2011 ROE listed 19 violations of law, including 8 repeat violations (from the

audit in 2010), which involved more than 350 instances of violations. [DOB Exhibit 1, pp. 21-

41; DOB Exhibit 2]. There was a shortage of $2,770.19 in the PCTF, which the respondents made up before the end of November, 2011. [TR 32; DOB Exhibit 1, p. 58]. The re-plat of Section J was deficient in several respects. [TR 34-44; DOB Exhibit 4 (Re-Plat of Section J, filed for record on 09/01/11); DOB Exhibit 5 (Plat of "Old Cemetery Section," showing county record numbers)]. DOB Exhibit 5 is understood to have been the plat of Section J as it was set out at the time when ownership of the cemetery changed from Mr. Wright to the respondents. [TR 43]. Conveyance documents had not been issued for 6 of the 50 instances that the 2010 ROE documented had not been issued as of June 30, 2010. [TR 54]. The ROE includes a report of each category of violation with a description of supporting evidence.

The June 30, 2011, ROE was sent to Mr. Weatherall by letter dated October 19, 2011, with instructions to correct the violations by November 23, 2011. [TR 22-23; see DOB Exhibit 1, p. 60]. Mr. Weatherall testified that corrective action had been taken. [TR 58-60]. The respondents sent a copy of the Minutes of November 11, 2011, board meeting at which discussions of the violations and corrective actions were recorded. [DOB Exhibit 1, pp. 58-60]. The minutes summarized a discussion that Mr. Weatherall was not aware that a deposit to the PCTF was due for donated graves, that he misunderstood the amount for deposit could include $1.75 per square foot as an alternative to 15% of the total sales price, and that 85% of the graves were donated. The minutes noted a plan for making and monitoring deposits and for auditing all books and deposits monthly. The minutes stated that all shortages have been corrected, correction for the contract for sale has been corrected, the interment/disinterment register has been corrected, all deeds have been corrected and issued to buyers, documentation of proof of ownership of the cemetery was provided, ownership of the "Museum" (an unused

mausoleum, *see*, DOB Exhibit 1, p. 64) was provided, correction regarding corporate status was provided, and that response to the consumer complaint was timely done. Also noted is an intention by the board to ask for an extension of time to re-plat the property. The minutes made references to tabs of supporting documents for most items, but the tabs were not included in the exhibit. Per a December 20, 2011, letter, the staff concluded that most of the stated corrections were not adequate, listed the deficiencies, and referenced an upcoming limited scope examination. [DOB Exhibit 1, pp. 61-66]. Per a January 24, 2011, letter, the staff noted receipt of the required documentation regarding the platting issue and proof of deposit to the PCTF. [DOB Exhibit 1, p. 67]. Department staff instructed Mr. Weatherall to provide by January 14, 2012, documentation of all actions taken to address the uncorrected violations stated in the December 20 letter. [TR 61-66]. Mr. Weatherall sent notice on January 24, 2012, which stated they had stopped selling graves in and closed Section J.

Limited Scope Examination: Period Ending February 7, 2012

As a result of the findings of a uniform risk rating of 5 in the previous examination, a limited scope examination was conducted sooner than according to the usual schedule. [TR 56]. The limited scope examination was conducted to determine the extent that management corrected the 19 categories of violations that were documented in the June 30, 2011, ROE and to review operations between July 1, 2011, and the date of the exam. Mr. LePlante was on-site in November, 2011, determined the extent that the respondents corrected violations from the 06/30/11 ROE, reviewed all post-June 30, 2011, purchase and conveyance documents, and compared burial cards and interment recor4ds for all of the recorded burials in Section J. The ROE from the limited scope examination documents the findings of the Department staff. [TR

42-57]. Mr. LePlante determined that, as of the November 23, 2011 deadline, corrective action had not been taken for 11 of the 19 categories of violations from the 06/30/11 ROE. [DOB Exhibit 1, p. 47]. The 02/07/12 ROE also documents 16 categories of new violations, including 11 repeat violations, which involved many instances of violation. [DOB Exhibit 1, pp. 42-57; *See also*, TR 57]. In general, the overall condition of the cemetery had not improved and was described to be critically poor. [DOB Exhibit 1, p. 47]. The condition in Section J was slightly improved. [Id., at p. 49]. More specifically, the ROE includes a report of each category of violation with a description of supporting evidence. From an exit meeting by telephone on February 16, 2012, the ROE notes that Mr. Weatherall agreed with the findings and planned to implement corrective actions. [DOB Exhibit 1, p. 56]. The staff concluded that it will refer the matter to the legal division for action. [DOB Exhibit 1, p. 56].

Certificate of Authority No. 74

The Cemetery Company operated under authority of Certificate of Authority No. 74 from the time of change of ownership in 2009. The department did not renew the certificate as of the March 1, 2012 renewal date. [DOB Exhibit 1, p. 3]. Mr. Weatherall testified that they did not receive notice that the application for renewal of the certificate had been denied. [TR 108; Weatherall Exhibit 1].

Cease and Desist Order

On May 16, 2012, the Commissioner signed Order No. 2012-011, an Emergency Order To Cease And Desist From Operating A Perpetual Care Cemetery Without A Valid Certificate Of Authority And From Violating Texas Health And Safety Code, effective the date of signing. The order included Findings of Fact and Conclusions that the respondents

violated many provisions of the Health and Safety Code and Finance Commission Rules.

[DOB Exhibit 1, pp. 1-6]. The Commissioner ordered the respondents to cease and desist (1)

from the sale of any cemetery spaces or interment rights in the cemetery until the department

confirmed that all violations were corrected, and (2) from all cemetery operations except for

burials for persons who own plots as of the date of the order, and for maintenance of the

property. [Id.]. The commissioner also ordered the respondents to ensure that each burial

allowed under the order occurs in a plot that is exclusively reserved for the use of the current

owner and that all required documentation is properly completed and maintained and sent to

the department within two business days of burial. [Id.].

## BANKING COMMISSIONER'S ENFORCEMENT AUTHORITY

Health and Safety Code Sec. 711.055
(b)     After notice and opportunity for hearing, the commissioner may impose an administrative penalty on a person who:
          (1) violates this chapter or a final order of the commissioner or rule of the Finance Commission of Texas and does not correct the violation before the 31st day after the date the person receives written notice of the violation from the Texas Department of Banking; or,
          (2) engages in a pattern of violations, as determined by the commissioner.
(c)     The amount of the penalty for each violation may not exceed $1,000 for each day the violation occurs.
(d)     In determining the amount of the penalty, the commissioner shall consider the seriousness of the violation, the person's history of violations, and the person's good faith in attempting to comply with this chapter. The commissioner may collect the penalty in the same manner that a money judgment is enforced in district court.

Health and Safety Code Sec. 711.056
(a)   If after a hearing conducted as provided by Chapter 2001, Government Code, the trier of fact finds that a violation of this chapter or a rule of the Finance Commission of Texas establishes a pattern of wilful disregard for the requirements of this chapter of rules of the finance commission, the trier of fact shall recommend to the commissioner that the maximum administrative penalty permitted under Section 711.055 be imposed on the person committing the violation or that the commissioner cancel or not renew the person's permit under Chapter 154, Finance Code, if the person holds such a permit.

(b)  For the purposes of this section, violations corrected as provided by Section 711.055 may be included in determining whether a pattern of wilful disregard for the requirements of this chapter or rules of the finance commission exists.

A permit under Chapter 154 of the Finance Code is not involved in this case.

## Health and Safety Code 712.0441

(a)  After notice and opportunity for hearing, the commission may impose an administrative penalty on a person who:

(1)  violates this chapter or a final order of the commissioner or rule of the Finance Commission of Texas and does not correct the violation before the 31st day after the date the person receives written notice of the violation from the banking department;

or,

(2)  engages in a pattern of violations, as determined by the commissioner.

(b)  The amount of penalty for each violation may not exceed $1,000 for each day the violation occurs.

(c)  In determining the amount of the penalty, the commissioner shall consider the seriousness of the violation, the person's history of violations, and the person's good faith in attempting to comply with this chapter.

## Health and Safety Code Sec. 712.0442

(a)  If, after a hearing conducted as provided by Chapter 2001, Government Code, the trier of fact finds that a violation of this chapter or a rule of the Finance Commission of Texas establishes a pattern of wilful disregard for the requirements of this chapter rules of the finance commission, the trier of fact may recommend to the commissioner that the maximum administrative penalty permitted under Section 712.0441 be imposed on the person committing the violation or that the commissioner cancel or not renew the corporation's certificate of authority under this chapter if the person holds such a certificate.

(b)  For the purposes of this section, violations corrected as provided by Section 712.0441 may be included in determining whether a pattern of wilful disregard for the requirements of this chapter or rules of the finance commission exists.

### ANALYSIS BY THE ADMINISTRATIVE LAW JUDGE

The evidence proves the occurrence of violations of the laws regulating the operation

of a perpetual care cemetery as charged by the staff for each violation, with one exception.

The administrative law judge concludes that the charge of violation of Health and Safety Code

§712.0037, which sets forth the conditions for annual renewal of a certificate of authority,

does not meet the criteria for imposition of an administrative penalty after a decision not to

DOB Docket 13-11-326
Antioch St. James Cemetery Company, et al.
Proposal for Decision Following Exceptions

Page 12

renew the certificate of authority. Under Section 712.0037(a), the commissioner reviews the holder's application for renewal and determines whether the holder meets the qualifications and requirements for holding a certificate. The charged violation involves one of those requirements. The commissioner may decide not to renew the certificate of authority, which is what happened in this case. The decision not to renew was the consequence for the respondents' failing to meet the requirements of Section 712.0037(a). The administrative law judge concludes that failure to meet the requirements of Section 712.0037(a) is not a violation that is subject to assessment of an administrative penalty after the decision not to renew the respondents' certificate of authority. Operation of a perpetual care cemetery without a certificate of authority is a violation, of course, and that violation is included in the Conclusions of Law. The remaining issues involve the assessment and amount of an administrative penalty.

**The Commissioner Has Discretion To Determine the Amount of Penalty**

Assessment of an administrative penalty is discretionary. Under Health and Safety Code §§711.056 and 712.0441, the Commissioner may assess an administrative penalty of up to $1,000 per day of violation if the responsible person (1) does not correct the violation within 30 days of notification or (2) engages in a pattern of violation. In this case, Mr. Weatherall is responsible for multiple violations that are set forth in the Conclusions of Law, which count in the hundreds and which involve multiple days for most violations. The violations include both those that were not corrected within 30 days of notice and those that establish a pattern of violation. Accordingly, the Commissioner is authorized by Chapters 711 and 712 to assess administrative penalties in an amount greatly exceeding the staff's

412

recommended range of $56,000 to $70,000 for fourteen violations.

If the trier of fact finds that violations establish a pattern of wilful disregard for the requirements of law, then the trier of fact may under §712.0442(a) and shall under §711.056(a) recommend that the Commissioner impose the maximum administrative penalty permitted or, under Section 712.0442, cancel or not renew the corporation's certificate of authority under this chapter if the person holds such a certificate. The evidence presented at the hearing proved a pattern of wilful disregard concerning the violations. It appears that the main reasons for the continuing violations were ignorance of the law at first, but later was incompetence and an indifference concerning management of the cemetery and the cemetery company. Nevertheless, the evidence proves the factors that support making a finding of wilful disregard. A determination of the issue of wilful disregard would not have a practical impact in this case, however, because the staff has recommended a lesser monetary penalty than what would be the maximum.

The seriousness of the violation, the person's history of violations, and the person's good faith in attempting to comply with the requirements of law are the factors prescribed by §§711.055 and 712.0442 to consider for deciding how much administrative penalty to assess. In this case, the many types of violations cover a range of seriousness. The violations concerning failure to disclose on the sale/purchase agreements the accurate amount to be deposited in the Perpetual Care Trust Fund appear to be low on the seriousness scale. Failure to make timely deposits in the Perpetual Care Trust Fund involve a higher seriousness, but the shortages ultimately were made up. The violations of failure to accurately plat and file for record an accurate plat and of failures to keep accurate burial records are particularly serious,

because they are necessary for anyone to locate the graves of those who were buried. It appears that these violations were a factor in some of the complaints. The violation of the Commissioner's Order is a very serious violation. The history of so may violations during a short period of time and of a violation of the Cease and Desist order weighs heavily in favor of a higher penalty. Mr. Weatherall's actions to correct many of the violations and that resulted in the continuing occurrence of violations demonstrates both good faith and a lack of good faith. In addition, it appears that the non-renewal of the certificate of authority and the facts that the respondents have lost ownership of the cemetery property, have terminated the corporation, and are out of the cemetery business, would weigh substantially against a higher amount of penalty.

Ultimately, the evidence supports an administrative penalty in the range that the staff advocated. The evidence shows a very large number of days of violation, with some of the violations being very serious. The evidence also could support a lesser penalty than the minimum of the range that the staff seeks, because of the factors discussed above and because the respondents appear to have acted more in incompetence than in bad faith. Based on the above analysis, the administrative law judge recommends that the Commissioner impose an administrative penalty that is no higher than the low end of the range advocated by the staff.

**FINDINGS OF FACT**

Based on the evidence of record and applicable law, the Administrative Law Judge makes the following findings of fact and conclusions of law.

1.      Notice of hearing was timely given to all respondents.

2.      Mr. Gerald Weatherall, Sr., appeared at the hearing individually and as former

President of Antioch St. Johns Cemetery d/b/a American Memorial Park.

3. Ms. Beverly Randall-Weatherall appeared at the hearing as former Vice-President of Antioch St. Johns Cemetery d/b/a American Memorial Park.

4. Antioch St. Johns Cemetery d/b/a American Memorial Park was a perpetual care cemetery that is located on 3.2 acres of land in Grand Prairie, Texas.

5. Antioch St. Johns Cemetery d/b/a American Memorial Park was operated as a corporation beginning in 1958, and is referred to herein as the "cemetery company."

6. Gerald Weatherall, Sr., and Beverly Randall-Weatherall purchased and began operating the cemetery property and the cemetery company in June, 2009.

7. The Secretary of State forfeited the cemetery company's corporate charter as of January, 2011, for failure to pay franchise taxes and reinstated the charter as of November 7, 2011.

8. Antioch St. Johns Cemetery d/b/a American Memorial Park operated as a perpetual care cemetery under Certificate of Authority No. 74.

9. When the Department decided not to renew Certificate of Authority No. 74, it expired as of the March 1, 2012, renewal date.

10. The Commissioner of Banking signed Order No. 2012-011, an Emergency Order to Cease and Desist against the cemetery company, Mr. Weatherall, and Ms. Randall-Weatherall, on May 16, 2012.

11. The respondents did not request a hearing concerning Order No. 2012-011 or otherwise challenge it.

DOB Docket 13-11-326
Antioch St. James Cemetery Company, et al.
Proposal for Decision Following Exceptions

Page 16

12. The cemetery company filed for Chapter 7 bankruptcy after May 16, 2012, but the estate was converted back to the owners because there were no assets to sell in bankruptcy.

13. Mr. Weatherall and Ms. Randall-Weatherall conveyed the cemetery property by deed in lieu of foreclosure to Avery Weatherall after May 16, 2012.

14. The respondents terminated the cemetery company's corporate charter with the Secretary of State after May 16, 2012.

15. Gerald Weatherall, Sr., was president of the cemetery company and exercised an active role as the person and officer who was responsible for the operations of the cemetery and the cemetery company.

16. Beverly Randall-Weatherall was vice-president of the cemetery company but did not exercise an active role in or responsibility for the operations of the cemetery or the cemetery company.

17. The Findings of Fact that are set forth in Order No. 2012-011 support conclusions that the cemetery company and Gerald Weatherall, Sr., individually and as president of the cemetery company, violated provisions of the Health and Safety Code Chapters 711 and 712 and of the Finance Commission Rules that are set forth therein and did not correct the violations within 30 days after receiving notice of them.

18. Staff of the Department's Special Audits Division conducted an examination of the cemetery property and cemetery company as of the close of business on June 30, 2010. The Report of Examination identified violations of applicable

DOB Docket 13-11-326
Antioch St. James Cemetery Company, et al.
Proposal for Decision Following Exceptions

Page 17

law and instructed the respondents to correct the violations no later than September 6, 2010. Staff sent the Report of Examination to the respondents on August 2, 2010.

19. Staff of the Department's Special Audits Division conducted an examination of the cemetery property and cemetery company as of the close of business on June 30, 2011. The Report of Examination identified violations of applicable law and instructed the respondents to correct the violations no later than November 23, 2011. Staff sent the Report of Examination to the respondents on October 19, 2011. The responsible persons did not timely correct all of the violations.

20. Staff of the Department's Special Audits Division conducted a limited scope examination of the cemetery property and cemetery company as of the close of business on February 7, 2012, in order to determine the extent to which the respondents had corrected previously noted violations. The Report of Limited Scope Examination identified the extent to which previously noted violations had been corrected and noted additional violations of applicable law and instructed the respondents to notify the department of their actions correcting the violations no later than July 4, 2012. Staff sent the Report of Limited Scope Examination to the respondents on April 30, 2012. The responsible persons did not timely correct all of the violations.

21. The condition of the cemetery property deteriorated after the respondents began operation of the cemetery and cemetery company. In general, the maintenance

DOB Docket 13-11-326
Antioch St. James Cemetery Company, et al.
Proposal for Decision Following Exceptions

Page 18

of the cemetery was very poor, including the following: an entrance did not have an adequate sign; sections within the cemetery were not adequately marked; graves had collapsed, creating deep sink holes, while there were mounds of dirt in other areas; and, graves had been dug in both directions in some cases.

22. The respondents corrected some of the individual violations that were set forth in the reports of examination, but did not correct all the violations in each type of violation within the stated deadlines.

23. Burial cards and the interment register show at least 77 instances of violation of record keeping requirements concerning sales of cemetery plots and burials, which were not corrected within 30 days after notice of the facts of violation was given to the respondents.

24. The cemetery company records were in such poor shape that it is difficult and probably impossible to determine from the records whose remains were buried in which location. Examples of the deficiencies in the records are shown on Department of Banking Exhibit No. 3 and include:

a. 21 burials shown on the burial cards were not recorded on the interment register;

b. the interment register reflects two burials in the same space on 8 occasions;

c. the interment register reflects a burial in a plot on 6 occasions when the burial card for the plot does not show a burial;

d. on 4 occasions, the burial card shows the burial of a person in a plot and the interment register shows the burial of another person in that plot;

418

e.     on 4 occasions, the burial cards and the interment register show different burial plots for the same person; and,

f.     on 4 occasions, the burial cards and the interment register show different persons were buried in the same burial plot.

25.     The cemetery company on many occasions did not accurately identify on the interment records of the cemetery the plot in which the remains of an individual are interred.

26.     The cemetery company did not record the final disposition of purchase agreements on the historical contract register on many occasions and did not correct the deficiencies within 30 days after notice of the facts of violation was given to the respondents.

27.     The cemetery company did not maintain accurate separate property files in the names of the purchasers of burial plots on many occasions and did not correct the deficiencies within 30 days after notice of the facts of violation was given to the respondents.

28.     The cemetery company repeatedly did not maintain a current financial statement that substantiated the use of income from the Perpetual Care Trust Fund.

29.     The cemetery company consistently did not accurately calculate the amount of money to be deposited in the Perpetual Care Trust Fund.

30.     The cemetery company did not for almost every month of its operation deposit within 20 days after the end of the month in which purchase agreements were paid in full any amount of money in the Perpetual Care Trust Fund. The

cemetery company did deposit the required amounts after department staff notified the respondents of the deficiencies.

31. The cemetery company did not disclose on agreements to purchase a cemetery plot the correct amount of money to be deposited in the Perpetual Care Trust Fund on many occasions and did not correct the deficiencies within 30 days after notice of the facts of violation was given to the respondents.

32. The cemetery company did not maintain accurate monthly recapitulations of the interment rights or conveyance of burial plot rights on many occasions and did not correct the deficiencies within 30 days after notice of the facts of violation was given to the respondents.

33. The cemetery company did not prepare and file with the county clerk an accurate map or plat of Section J that showed the cemetery plots and their orientation to the remainder of the cemetery property, including the boundaries of the cemetery property.

34. The cemetery company sold cemetery plots on many occasions without having filed an adequate accurate map or plat of Section J with the county clerk and has not filed such a plat.

35. The cemetery company did not issue to the appropriate person and file in its office the conveyance document after cemetery plots were paid in full on many occasions and often did not correct those deficiencies within 30 days after notice of the facts of violation was given to the respondents.

36. The cemetery company operated and conducted cemetery operations after March 1, 2012.

DOB Docket 13-11-326
Antioch St. James Cemetery Company, et al.
Proposal for Decision Following Exceptions

Page 21

420

37. The cemetery company did not send notice of the June 14, 2012, burial of Lena Sneed-Holleman to the department within two days as required by Order No. 2012-011.

38. Although Mr. Weatherall attempted to address violations that were brought to his attention, the failure to correct all of the violations and the continual frequent repetition of the several types of violation throughout the time he was responsible for the operations of the cemetery company establishes a pattern of wilful disregard for the requirements of the law that applies to perpetual care cemeteries.

39. The continual occurrences of violations and Mr. Weatherall's actions concerning the operations of the cemetery and the cemetery company were initially more the result of ignorance of the legal requirements and later, of combinations of an inability to accomplish and inattention to the accomplishment of the legal requirements. Mr. Weatherall eventually made up the shortages in the Perpetual Care Trust Fund after the department staff notified him and demanded compliance. He attempted to address the complaints. Some of the record-keeping deficiencies were corrected after notice and demand from the staff. He ultimately gave up the cemetery and cemetery company as a result of financial insolvency. He has continued to pay for some maintenance of the cemetery property.

## CONCLUSIONS OF LAW

1.  Proper notice of hearing was timely given to Antioch St. James Cemetery Company d/b/a/ American Memorial Park ("cemetery company"), Gerald Weatherall Sr., individually and as president of the cemetery company, and Beverly Randall-Weatherall as vice-president of the cemetery company.

2.  The Commissioner of Banking has jurisdiction to enforce the provisions of the Texas Health and Safety Code and Texas Finance Commission Rules concerning the operations of perpetual care cemeteries, specifically with respect to Antioch St. James Cemetery Company d/b/a American Memorial Park, the actions of Gerald Weatherall, Sr., individually and as president of the cemetery company, and the actions of Beverly Randall-Weatherall as vice-president of the cemetery company, and to the violations which are charged in this docket.

3.  During the period from 2009 to March 1, 2012, when it was owned and operated by the respondents, Antioch St. James Cemetery d/b/a American Memorial Park was a perpetual care cemetery under Health and Safety Code §711.001(24) that was operated under Certificate of Authority No. 74.

4.  Order No. 2012-011, the May 16, 2012, Emergency Cease and Desist Order concerning the respondents in this case, is a final order and its Findings of Fact are taken as true.

5.  The responsible persons violated Health and Safety Code §711.003(4) on multiple occasions by failing to accurately identify on the interment records of the cemetery the plot in which the remains of a specific individual was interred

and failing to correct the violations within 30 days after receiving notice of the violations from the Department.

6. The responsible persons violated Finance Commission Rule 7 Texas Administrative Code §26(2)(b)(4) on multiple occasions by failing to record the final disposition of purchase agreements on the historical contract register and failing to correct the violations within 30 days after receiving notice of the violations from the Department.

7. The responsible persons violated Finance Commission Rule 7 Texas Administrative Code §26(2)(b)(3) on multiple occasions by failing to maintain separate property files in the names of the purchasers and failing to correct the violations within 30 days after receiving notice of the violations from the Department.

8. The responsible persons violated Finance Commission Rule 7 Texas Administrative Code §26.2(b)(1)(A) on several occasions by failing to maintain a financial statement that substantiates the cemetery's use of trust fund income and failing to correct the violations within 30 days after receiving notice of the violations from the Department.

9. The responsible persons violated Health and Safety Code §712.028(a) on multiple occasions by failing to accurately calculate the amount of perpetual care funds to be deposited and failing to correct the violations within 30 days after receiving notice of the violations from the Department.

DOB Docket 13-11-326
Antioch St. James Cemetery Company, et al.
Proposal for Decision Following Exceptions

Page 24

10. The responsible persons violated Health and Safety Code §712.029(c) on multiple occasions by failing to timely deposit the correct amount of funds into the perpetual care trust fund.

11. The responsible persons violated Health and Safety Code §712.029(a) on multiple occasions by failing to disclose on the purchase agreements the correct amount of perpetual care funds to be deposited in the perpetual care trust fund and failing to correct the violations within 30 days after receiving notice of the violations from the Department.

12. The responsible persons violated Finance Commission Rule 7 Texas Administrative Code §26.2(b)(5) on multiple occasions by failing to maintain accurate monthly recapitulations of all interment rights issued and failing to correct the violations within 30 days after receiving notice of the violations from the Department.

13. The responsible persons violated Health and Safety Code §711.034(a)(1) by failing to accurately survey and map or plat Section J of the cemetery property showing the plots contained within the perimeter boundary and showing a specific unique number for each plot and failing to correct the violations within 30 days after receiving notice of the violations from the Department.

14. The responsible persons violated Health and Safety Code §711.034(b) by failing to file an accurate map or plat of Section J with the county clerk in which the cemetery is located and failing to correct the violations within 30 days after receiving notice of the violations from the Department.

424

15. The responsible persons violated Health and Safety Code §711.038(a)(1) by selling, conveying, or both selling and conveying the exclusive right of sepulture in a plot in Section J before an accurate map or plat and a certificate or declaration of dedication was filed with the county clerk as provided by Section 711.034 and failing to correct the violations within 30 days after receiving notice of the violations from the Department.

16. The responsible persons violated Finance Commission Rule §26.5 by failing on multiple occasions, with respect to Section J, to issue a conveyance document for a cemetery plot, as defined by Health and Safety Code §711.001(25), no later than 20 days after the end of the month in which the contract is paid in full and failing to correct the violations within 30 days after receiving notice of the violations from the Department.

17. The responsible persons violated Health and Safety Code §711.038(c) by failing on multiple occasions, with respect to Section J, to file in the cemetery organizations' office the conveyance of the exclusive right of sepulture in Section J and failing to correct the violations within 30 days after receiving notice of the violations from the Department.

18. The responsible persons violated Health and Safety Code §712.0032 by operating a perpetual care cemetery after March 1, 2012, without holding a certificate of authority to operate a perpetual care cemetery under Health and Safety Code Chapter 712.

19. The responsible persons violated Commissioner Order No. 2012-011 by burying the body of a person on June 14, 2012, and failing to timely send the required documentation to the Department.

20. With respect to the asserted violation of Health and Safety Code §712.0037(a), the responsible person's actions concerning failure to maintain required minimum capital did not amount to a violation of law that is subject to imposition of an administrative penalty after the department decided not to renew the certificate of authority.

21. Gerald Weatherall, Sr., is the person who is responsible, individually and in his capacity as former president of Antioch St. James Cemetery d/b/a American Memorial Park, for the violations of law that are set forth in these Findings of Fact and Conclusions of Law.

22. The Commissioner of Banking in his discretion has the authority under Health and Safety Code Sections 712.0441 and 711.055 to assess an administrative penalty against Antioch St. James Cemetery d/b/a American Memorial Park and Gerald Weatherall, Sr., in his individual capacity and in his capacity as former president of the cemetery company, in the amount of $1,000 for each day of violation.

23. An administrative penalty in the amount of up to $70,000.00 is supported by the evidence under the provisions of Health and Safety Code Sections 711.055, 711.056, 712.0441, and 712.0442.

## RECOMMENDATION

Based on the evidence and applicable law, including the facts that the Department has acted by not renewing Certificate of Authority No. 74, the cemetery company is no longer in business, and the respondents no longer own the cemetery property or conduct cemetery operations, the administrative law judge recommends an administrative penalty up to $56,000.00.

Signed this 12th day of November, 2013.

_Donald N. Walker_

Donald N. Walker
Administrative Law Judge

DOB Docket 13-11-326
Antioch St. James Cemetery Company, et al.
Proposal for Decision Following Exceptions

Page 28

Docket No. BE-13-11-326

| | | |
|---|---|---|
| IN THE MATTER OF ANTIOCH | § | BEFORE THE BANKING |
| ST. JAMES CEMETERY COMPANY | § | |
| d/b/a AMERICAN MEMORIAL PARK, | § | |
| GRAND PRAIRIE, TEXAS, (Certificate | § | |
| of Authority No. 74, expired); | § | |
| | § | |
| GERALD WEATHERALL, SR., AS ITS | § | COMMISSIONER OF TEXAS |
| PRESIDENT AND IN HIS INDIVIDUAL | § | |
| CAPACITY; AND, | § | |
| | § | |
| BEVERLY RANDALL-WEATHERALL | § | |
| AS ITS VICE-PRESIDENT | § | AUSTIN, TRAVIS COUNTY, TEXAS |

## FINAL ORDER

On this _____ day of _____, 2013, came on to be considered Docket No. BE-13-11-326. After reviewing the administrative record and the Proposal for Decision Following Exceptions issued by the Administrative Law Judge on November 12, 2013, I have determined that the Findings of Fact and Conclusions of Law are supported by the evidence of record and applicable law.

I, therefore, ADOPT the Proposal for Decision Following Exceptions, including specifically the Findings of Fact and Conclusions of Law that are set forth in the Proposal for Decision Following Exceptions and incorporate in this Order the Findings of Fact and Conclusions of Law therein as if set out in full in this Order.

Based on the record and the Findings of Fact and Conclusions of Law, I conclude that an administrative penalty in the amount of $_____ is justified and appropriate under the factors required by law.

It is, therefore, ORDERED that an administrative penalty in the amount of $_____ be and is hereby ASSESSED against respondents Antioch St. James Cemetery Company d/b/a American Memorial Park, and Gerald Weatherall, Sr., in his individual capacity and in his capacity of former President of Antioch St. James Cemetery Company d/b/a American Memorial Park.

428

Respondents Antioch St. James Cemetery Company d/b/a American Memorial Park, and Gerald Weatherall, Sr., in his individual capacity and in his capacity of former President of Antioch St. James Cemetery Company d/b/a American Memorial Park, jointly and severally, are ORDERED to pay an administrative penalty of $_____ to the Texas Department of Banking.

All relief that was requested but not granted or otherwise disposed of herein is denied.

SIGNED and ENTERED this _____ day of _____, 2013.


_____
Charles G. Cooper
Banking Commissioner

# Appendix 2

**Final Order No. 2013-028**

Order No. 2013-028
Docket No. BE-13-11-326

| | | |
|---|---|---|
| IN THE MATTER OF ANTIOCH ST. JOHNS CEMETERY COMPANY d/b/a AMERICAN MEMORIAL PARK, GRAND PRAIRIE, TEXAS, (Certificate of Authority No. 74, expired); | §<br>§<br>§<br>§<br>§<br>§ | BEFORE THE BANKING |
| GERALD WEATHERALL, SR., AS ITS PRESIDENT AND IN HIS INDIVIDUAL CAPACITY; AND, | §<br>§<br>§<br>§ | COMMISSIONER OF TEXAS |
| BEVERLY RANDALL-WEATHERALL AS ITS VICE-PRESIDENT | §<br>§ | AUSTIN, TRAVIS COUNTY, TEXAS |

## FINAL ORDER

On this 25-th day of November, 2013 came on to be considered Docket No. BE-13-11-326. After reviewing the administrative record and the Proposal for Decision Following Exceptions issued by the Administrative Law Judge on November 12, 2013, I have determined that the Findings of Fact and Conclusions of Law are supported by the evidence of record and applicable law.

I, therefore, ADOPT the Proposal for Decision Following Exceptions, including specifically the Findings of Fact and Conclusions of Law that are set forth in the Proposal for Decision Following Exceptions and incorporate in this Order the Findings of Fact and Conclusions of Law therein as if set out in full in this Order.

Based on the record and the Findings of Fact and Conclusions of Law, I conclude that an administrative penalty in the amount of $56,000 is justified and appropriate under the factors required by law.

It is, therefore, ORDERED that an administrative penalty in the amount of $56,000 be and is hereby ASSESSED against respondents Antioch St. Johns Cemetery Company d/b/a American Memorial Park, and Gerald Weatherall, Sr., in his individual capacity and in his capacity of former President of Antioch St. Johns Cemetery Company d/b/a American Memorial Park.

Respondents Antioch St. Johns Cemetery Company d/b/a American Memorial Park, and Gerald Weatherall, Sr., in his individual capacity and in his capacity of former President of Antioch St. Johns Cemetery Company d/b/a American Memorial Park, jointly and severally, are ORDERED to pay an administrative penalty of $56,000 to the Texas Department of Banking.

All relief that was requested but not granted or otherwise disposed of herein is denied.

SIGNED and ENTERED this __25th__ day of November, 2013.

Charles G. Cooper
Banking Commissioner

# Appendix 3

## Motion for Re-Hearing

DOCKET NO. BE 13-11-326

| | | |
|---|---|---|
| IN THE MATTER OF ANTIOCH | § | BEFORE THE BANKING |
| ST. JOHNS CEMETARY COMPANY | § | |
| d/b/a AMERICAN MEMORIAL PARK, | § | |
| GRAND PRAIRIE, TEXAS, (Certificate | § | |
| of Authority No. 74, expired); | § | |
| | § | COMMISSIONER OF TEXAS |
| GERALD WEATHERALL, AS ITS | § | |
| PRESIDENT AND IN HIS INDIVIDUAL | § | |
| CAPACITY; AND; | § | |
| | § | |
| BEVERALY RANDALL-WEATHERALL | § | |
| AS ITS VICE-PRESIDENT | § | AUSTIN, TRAVIS COUNTY, TEXAS |

## MOTION FOR RE-HEARING

NOW COMES, Antioch St. Johns Cemetery Company d/b/a American Memorial Park, Grand Prairie, Texas, Gerald Weatherall, and Beveraly Randall-Weatherall (the "Movants"), to file this, their Motion for Rehearing on the Final Order of the administrative law judge for the above referenced and numbered cause.

To the extent that the Movants disagree with the penalties assessed against the individual movants in their individual capacities, and that such penalties do no comport with the finding of facts by the Administrative Law Judge and the rules regarding governance of cemeteries for the state of Texas, Movants request a rehearing in this cause.

Accordingly, this Motion for Rehearing is being submitted pursuant to Texas Government Code §§ 2001.145 and 2001.146.

*MOTION FOR REHEARING*                                                            *PAGE - 1*

Respectfully Submitted by:
THE LAW OFFICES OF KEVIN S. WILEY, JR.

/s/ Kevin S. Wiley, Jr.
Kevin S. Wiley, Jr.
Texas State Bar No. 24029902
325 N. St. Paul Street, Suite 4400
Dallas, Texas 75201
Tel.: 469-619-5721
Fax.: 469-619-5725
ATTORNEY FOR
Gerald Weatherall and Beverly Weatherall

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Motion for Rehearing has been served on the Banking Commission by and through their counsel of record below on this 27th day of December via electronic mail

Deborah H. Loomis
Assistant General Counsel
dloomis@dob.texas.gov
2601 N. Lamar Blvd.
Austin, Texas 78705



Charles G. Cooper
Commissioner

**TEXAS DEPARTMENT OF BANKING**

*2601 North Lamar Blvd., Austin, Texas 78705*
*512-475-1300 /877-276-5554*
*www.dob.texas.gov*

January 7, 2014

Kevin S. Wiley, Jr.
The Law Offices of Kevin S. Wiley, Jr.
325 N. St. Paul Street, Suite 4400
Dallas, Texas 75201

*Transmitted via:*
*Certified Mail, return receipt requested,*
*No. 7192 3020 0010 2000 1729*
*and email to kevinwiley@LKSWJR.com*

Deborah H. Loomis
Texas Department of Banking
2601 North Lamar Boulevard, Suite 300
Austin, Texas 78705

*Transmitted via:*
*Hand Delivery*

Re:     In The Matter of Antioch St. Johns Cemetery Company dba American Memorial Park,
        Grand Prairie, Texas; Gerald Weatherall, as its President and in his individual capacity;
        and Beverly Randall-Weatherall, as its Vice-President; Docket No. BE-13-11-326;
        Commissioner's Order 2013-028

Dear Mr. Wiley and Ms. Loomis:

I have reviewed the Motion for Re-Hearing in the above referenced matter filed by Antioch St.
Johns Cemetery Company dba American Memorial Park, Grand Prairie, Texas, Gerald
Weatherall, and Beverly Randall-Weatherall dated December 27, 2013, and the Reply of Texas
Department of Banking to Motion for Rehearing Filed by Respondents.

The Motion for Re-Hearing is denied.

Sincerely,

Charles G. Cooper
Banking Commissioner


cc:     A. Kaylene Ray, General Counsel

# Appendix 4

**Final Order – Travis County District Court**

Filed in The District Court
of Travis County, Texas

APR 30 2015

At _____ P.M.
Velva L. Price, District Clerk

CAUSE NO. D-1-GN-14-000367

| | | |
|---|---|---|
| ANTIOCH ST JOHN CEMETERY COMPANY D/B/A AMERICAN MEMIORIAL PARK, GRAND PRAIRIE, TEXAS, GERALD WEATHERALL and BEVERLY RANDALL-WEATHERALL, *Plaintiffs,* | § § § § § § § § § | IN THE DISTRICT COURT OF |
| V. | § § § | TRAVIS COUNTY, TEXAS |
| THE TEXAS DEPARTMENT OF BANKING COMMISSIONER, *Defendant* | § § § § § | |
| | § | 261st JUDICIAL DISTRICT |

## FINAL ORDER

On April 30, 2015, the Court heard the administrative appeal of Plaintiffs Antioch St. John Cemetery Company d/b/a American Memorial Park, Grand Prairie, Texas, Gerald Weatherall, and Beverly Randall-Weatherall. After considering the parties' briefs, arguments of counsel, and the applicable law, the Court finds that the Texas Banking Commissioner's Order No. 2013-028, entered on November 25, 2013, should be affirmed.

It is therefore ORDERED that Commissioner's Order No. 2013-028, entered on November 25, 2013, is AFFIRMED.

SIGNED on ___April 30___, 2015.

_____
HONORABLE SCOTT JENKINS

Approved as to form:

_____
Laura Barbour
Asst Atty General
Atty for Texas Dept. of
Banking Commissioner

_____
Attorney for
Antioch St Johns
Gerald Weatherall and
Beverly Weatherall